W. Carrington THOMPSON, et al., Plaintiffs,

v.

Charles B. WALKER, et al., Defendants.

Civ. A. No. 83–1302–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 23, 1984.

On Motion to Reconsider
April 2, 1984.

George F. West, Jr., Murphy, McGettigan & West, Alexandria, Va., for plaintiffs.

John A. Gibney, Jr., Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

### I. FACTUAL BACKGROUND

The plaintiffs are three former Virginia circuit court judges and a former Virginia

Supreme Court Justice (who also served as a circuit court judge prior to his appointment to the Supreme Court) who have brought suit against the Virginia Supplemental Retirement System (VSRS) and the Virginia State Bar. They seek a declaration that Va.Code Ann. § 51–179 and Canon 8(C) of the Canons of Judicial Conduct violate the Equal Protection Clause of the U.S. Constitution and Article VI, sections 11 and 9 of the Virginia Constitution. In addition, they seek a declaration that § 51–178(a) and (d) and Canon 8(C) violate Article VI, section 4 of the Virginia Constitution.

In 1970, the Virginia General Assembly created the Judicial Retirement System. Va.Code Ann. § 51–160 *et seq.* According to the legislative scheme that was set up, the plaintiffs were required to become members of the system and to contribute portions of their salary to the system. Va. Code Ann. § 51–162, 164. Those who receive retirement benefits under the system may be recalled to the state bench, either to hear particular cases or for a period of time not to exceed ninety days. Va.Code Ann. § 51–178. Recalled judges who have not attained the age of seventy are obliged to serve; those over seventy have discretion to refuse service.

Retired judges who are receiving retirement benefits may not appear as counsel in Virginia courts. They may, however, draft documents and advise clients in an "office practice" capacity. In addition, the statute permits them to appear as counsel in federal courts. The pertinent code provision states: "No former justice or judge of a [Virginia] court ... who is retired and receiving retirement benefits ... shall appear as counsel in any case in any [Virginia] court ...." Va.Code Ann. § 51–179. Canon 8(C) of the Canons of Judicial Conduct provides that § 51–179 shall apply to all retired judges eligible for recall to judicial service. These two provisions force retired Virginia judges to choose between receiving retirement benefits, on the one hand, and appearing as counsel in Virginia courts, on the other. Plaintiffs Purcell and Thompson decided to accept retirement

benefits under the system, while plaintiffs Craig and White elected to refuse these benefits in order to be able to practice law in Virginia courts.

This matter comes before the Court on defendants' motion to dismiss. Defendants argue that they are not proper parties or, in the alternative, that plaintiffs' allegations fail to state a violation of the federal Constitution's equal protection clause. For reasons stated below, the Court holds that the Virginia State Bar is a proper party. The suit is dismissed as to this defendant because § 51–179's prohibition does not violate federal equal protection. Based on this disposition of the merits of plaintiffs' federal claims, the Court dismisses the suit as to VSRS for failure to raise a federal question.

## II. PROPER PARTIES

The Board of Trustees of the VSRS and the Virginia State Bar maintain that they are not proper defendants to this action. The State Bar contends that it lacks authority to sanction violations of § 51–179 or, alternatively, that the exercise of such authority is too speculative to justify injunctive and declaratory relief.

A retired judge who both receives retirement benefits and appears in Virginia courts violates § 51–179 and Canon 8(C) of the Canons of Judicial Conduct, which incorporates and interprets § 51–178. The State Bar points out that it has no authority to sanction violations of Canon 8(C); that task, it correctly argues, falls within the exclusive domain of the Judicial Inquiry and Review Commission. Va. Const. art. VI, § 12. The State Bar also argues that alleged violations of § 51–179 must likewise be referred to the Judicial Inquiry and Review Commission.

■ The flaw in defendant's analysis of § 51–179 is that it erroneously assumes that the Judicial Inquiry and Review Commission has exclusive authority to sanction violations of § 51–179. In truth, both the Commission and the State Bar have authority to punish violations of § 51–179. Viola-

tions of § 51–179 reflect on the violator's fitness to decide cases as a judge. The Commission has exclusive authority to determine how a violator's fitness as a judge is affected and to sanction the violator in his capacity as a judge. But, in addition to its relevance to fitness to sit as judge, a violation of § 51–179 undoubtedly bears on the violator's fitness to practice law. First, § 51–179's prohibition is directed to attorneys who appear in court as well as judges. The State Bar necessarily must consider disciplining attorneys who violate laws that explicitly regulate the behavior of attorneys. Second, even if § 51–179 is construed as directed only to the behavior of judges, violations are relevant to the violator's fitness to practice law. Whether addressed only to judges or· to both attorneys and judges, the provision regulates the legal profession. The State Bar, to protect the integrity and general reputation of its members, has an obvious interest in insuring that its members obey laws regulating the legal profession generally.

Because violations of § 51–179 bear a substantial relationship to an attorney's fitness to practice law, the State Bar has authority to discipline a violator. Virginia Code of Professional Responsibility, Disciplinary Rule 1–102(A)(3). Of course, the inquiries of the Commission and the State Bar into alleged violations potentially overlap. Both entities must first determine whether a violation has in fact occurred. Defendant's argument that it must refer alleged violations to the Commission might be true, at least initially. To avoid the potential for conflicting determination on whether a violation has in fact occurred, the State Bar might justifiably refer this issue to the Commission. But once it has been determined that a violation has occurred, the Commission and the State Bar each have separate authority to impose sanctions. While the Commission has authority to discipline a violator in his capacity as a judge, the State Bar has authority to discipline a violator in his capacity as an attorney.

■ In light of the State Bar's legal authority to sanction violations of § 51–179, the Court holds that it is an appropriate party to this lawsuit.

The Court declines to reach the issue of whether the VSRS is also an appropriate party. Based on the conclusion, developed *infra*, that § 51–179 does not violate the federal constitution, the Court dismisses the suit as to the Board on an independent jurisdictional ground, that is, failure to state a federal question.

### III. MERITS

The plaintiffs assert that § 51–179, together with Canon 8(C), violate the Equal Protection Clause ·of the Fourteenth Amendment. At the outset, the parties dispute the level of scrutiny that the Court should employ in assessing the constitutionality of these provisions. They agree that strict scrutiny is inappropriate because neither a "suspect class" nor a·"fundamental right", as traditionally conceived, is involved. Plaintiffs, however, maintain that the prohibition is more than an economic regulation subject to relaxed rational basis review. The prohibition, as they view it, trenches on their "right" to practice law, a right they characterize as a component of the concept of liberty guaranteed by the Fourteenth Amendment. They accordingly contend that the statute must bear a "fair and substantial relation" to the legislature's purpose[s] in enacting the statute. *See, e.g., Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1972) (applying "fair and substantial relation" test to gender-based classifications).

The Court need not decide whether the fair and substantial relation test or the rational basis test applies. Even assuming that the more searching fair and substantial relation standard of review applies, the statute easily satisfies the demands of the Equal Protection Clause.

Plaintiffs assert that the statute creates three illegal classifications. The Court holds that two of the allegedly illegal classifications bear a fair and substantial relation to the legislative purpose. Plaintiffs

lack standing to argue the illegality of the third classification.

█ Plaintiffs first argue that the statute unjustifiably distinguishes between retired judges, on the one hand, and other retired government attorneys, on the other. Unlike retired judges, other retired government attorneys may both receive retirement benefits and practice in Virginia courts. Plaintiffs argue that, for purposes of equal protection, both groups must be viewed as part of a larger category of retired government attorneys. They maintain that the statute, by arbitrarily singling retired judges out of this larger category for less favorable treatment, violates equal protection.

Plaintiffs' argument ignores at least two important differences between retired judges and other retired government attorneys. First, unlike retired judges, other retired government attorneys are not subject to recall. Upon retirement there is consequently no potential conflict, either real or apparent, between their role as privately employed attorneys and their continuing role as government employees. In the case of retired judges, however, the statute serves in a fair and substantial way to eliminate the apparent conflict between their continuing governmental role as a judge and their role as a private advocate. Second, the roles of a judge and of other types of government attorneys are obviously different. A government attorney other than a judge is an advocate. When the attorney retires and moves into private practice the essential nature of his role remains unchanged; he is still an advocate. The role of a judge, however, is fundamentally different from that of an advocate; a judge must remain impartial. The statute, by requiring retired judges subject to recall to curtail their activities as an advocate, recognizes and seeks to resolve the apparent conflict between the role of a judge and the role of an advocate, a conflict that does not arise for one who acts at all times as an advocate. For these two reasons, the statute's distinction between judges and other retired government attorneys bears a fair and substantial relation to the permissible governmental purpose of avoiding the appearance of impropriety.

Plaintiffs also maintain that the statute creates an unlawful distinction between retired judges who have an "office practice" and those who have or desire a litigation practice. The statute forbids a judge receiving retirement benefits from appearing as counsel in Virginia courts. This presumably permits a retired judge to draft documents, advise clients and the like but prohibits him from taking an active part in litigation by signing briefs, arguing motions or trying a case. The Court rejects plaintiffs' argument that this distinction is unconstitutional.

The statute is clearly designed, at least in part, to avoid an *appearance* of impropriety. The fact that a retired judge, between stints on the bench, publicly represents a private party raises questions about his impartiality. This appearance of partisanship is diminished where the retired judge works anonymously and behind the scenes for his clients. An appearance in court makes public the potentially conflicting roles occupied by a retired judge who acts interchangeably as an interested advocate and a disinterested jurist.

Thus, the statute's distinction between retired judges who appear in court and those who do not appear bears a fair and substantial relation to the purpose of avoiding an appearance of impropriety or partiality. The irony of plaintiffs' position is that the legislature, in making the allegedly illegal distinction, demonstrated sensitivity to the needs and concerns of retired judges. If the legislature had wished to eliminate all possible appearances of impropriety it would have forbade retired judges subject to recall from practicing law entirely. Instead, it apparently balanced the need or desire of retired judges to practice law against the interest in avoiding an appearance of partiality. The legislature evidently found the former concern more weighty where the retired judge does not appear in court.

Plaintiffs finally argue that the statute creates an unlawful distinction between judges who resign prior to the age of mandatory retirement and judges who retired mandatorily. A judge who resigns before reaching 70, the age of mandatory retirement, may choose not to claim retirement benefits for which he is eligible. Plaintiffs assert that this allows the judge to appear in court while he defers his claim to retirement benefits. According to plaintiffs, a judge who reaches the age of mandatory retirement does not have the luxury of this choice. The statute, as plaintiffs read it, precludes a judge who reaches 70 from deferring his claim to retirement benefits, thus preserving his ability to litigate. A mandatorily retired judge, they assert, must elect either to forego a litigation practice or forever relinquish all claims to retirement benefits. Plaintiffs contend that the differential treatment accorded to mandatorily retired judges and judges who resign before reaching 70 is irrational.

The short answer to plaintiffs' argument is that they lack standing to raise it. None of them is 70 or older. Plaintiffs do not argue that the statute, as applied to judges who resign before the age of 70, is irrational. They do not contend that judges who resign before reaching 70 should be precluded from electing to defer their claims to retirement benefits and to enjoy a litigation practice until they do claim benefits. Rather, they argue that the legislature irrationally decided not to afford mandatorily retired judges the same choice. Plaintiffs have no standing to argue that because the statute burdens judges who retire mandatorily it violates equal protection.

In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court declared, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of third parties." There is no reason to depart from this general principle here. Judges who have retired or will retire mandatorily may, if they wish, bring suit themselves and raise the argument that plaintiffs raise. There is no impediment preventing them from doing so. Further, the rights of the plaintiffs, all of whom left the bench for reasons other than mandatory retirement, are in no way dependent on rights of judges who retire mandatorily. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

For the foregoing reasons, the suit is DISMISSED.

## ON MOTION TO RECONSIDER

On February 23, 1984, this Court entered an order granting defendants' motion for summary judgment and dismissing plaintiffs' suit. Plaintiffs now urge the Court to reconsider its ruling. For reasons stated below, the Court reaffirms its prior ruling.

## I.

■ Plaintiffs first argue that in reaching its decision the Court misconstrued Virginia law. The Court interpreted Va.Code Ann. § 51–178 to *require* retired judges under the age of 70 to serve if recalled. Plaintiffs maintain that this interpretation conflicts with Art. VI, § 4 of the Virginia Constitution which they read to give former judges discretion to accept or refuse recall.[1] According to plaintiffs, section 51–178 must either be interpreted to give retired judges discretion to refuse recall or be held to violate the Virginia Constitution.

The Court rejects plaintiffs' contention that section 51–178 must be interpreted to give retired judges discretion to refuse recall. In support of their argument, plaintiffs cite the maxim that statutes must be construed to conform to constitutional requirements. While useful in construing ambiguous statutory language, this maxim does not authorize a court to disregard a

1. The provision provides:
   [The Chief Justice of the Supreme Court] may ... assign a retired judge of a court of record, with his consent, to any court of record except the Supreme Court.

statute's plain terms. The language of section 51–178 is plain and unmistakable:

> (d) *Obligation to serve.* It *shall* be the *obligation* of any retired justice ... who is recalled to temporary service ... and who has not attained the age seventy to accept such recall and perform the duties assigned ....

Va.Code Ann. § 51–178(d) (emphasis added). Section 51–178 could not be clearer: A retired judge under 70 must serve if recalled. The Court adheres to its interpretation of the statute.

The Court lacks jurisdiction to address plaintiffs' argument that the statute, so interpreted, violates the Virginia Constitution. There is no federal claim to which this pendent state claim may attach.

## II.

■ Plaintiffs make an alternative argument that despite its literal language, section 51–178, *as applied*, gives retired judges discretion to refuse recall service.

They argue that this fact has important constitutional implications. In upholding the constitutionality of section 51–178, this Court held that it is designed in part to avoid the appearance of partiality that arises when a retired judge's public role is divided between that of an interested litigator and a disinterested judge.[2] Plaintiffs insist that this improper appearance need not arise because, in practice, retired judges have discretion to refuse recall. A retired judge, they contend, can avoid any appearance of partisanship by declining all recall assignments. In their view, judges who categorically refuse recall service therefore cannot constitutionally be prohibited from appearing in Virginia courts while receiving retirement benefits.

■ The Court, as it must on a motion for summary judgment, accepts the truth of plaintiffs' unrebutted factual allegation that, in practice, retired judges have discretion to refuse recall service. This alleged

---

2. In their brief plaintiffs argue that avoidance of an appearance of impropriety is not a legitimate state interest. *See* Plaintiffs' Response to Defendants' Response to Motion to Alter Judgment, at 1. This argument borders on the irresponsible. If accepted, it implies that a wide array of legislation concerning ethics in government is constitutionally invalid. This is not the law. In *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (quoting *Civil Service Comm'n v. National Ass'n of Letter Carriers,* 413 U.S. 548, 565, 93 S.Ct. 2880, 2890, 37 L.Ed.2d 796 (1973)), for example, the Supreme Court declared: "Congress could legitimately conclude that the avoidance of the appearance of improper influence 'is also critical [if] confidence in the system of representative Government is not to be eroded to a disastrous extent.'"

Plaintiffs also take the position that the Court needs to hold a fact-finding hearing to determine whether the statute actually is designed to avoid an appearance of impropriety and, if so, whether an appearance of impropriety in fact arises where a retired judge acts interchangeably as an attorney and a judge. Plaintiffs misconstrue the nature of the issues at stake.

The determination of the purposes of a statute is always a matter of law, not fact. Of course, Virginia does not compile legislative histories in which the purposes of its statutes authoritatively appear. Yet this Court is not, as plaintiffs seem to suggest, authorized to fill this void by eliciting testimony from the legislators who enacted the statute. Our system of federalism will not countenance such a bald intrusion into the

workings of state government by the federal judiciary. Besides being unduly intrusive, an evidentiary inquiry into the purposes of § 51–179 would be unnecessary; the purpose of the provision is apparent. Like many statutes regulating the behavior of government officials, it is aimed in part at avoiding an appearance of impropriety. *See, e.g., Civil Service Comm'n, supra* (upholding constitutionality of restrictions on political activity of federal civil servants).

The Court also rejects plaintiffs' argument that this Court must determine, as a matter of fact, whether an improper appearance of partisanship arises if a retired judge acts interchangeably as a jurist and an advocate. This is a legislative, not an adjudicative, fact. Legislatures have broad powers in determining the legislative facts on which a statute is based. As stated in *Vance v. Bradley,* 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979), the test is whether the legislative facts on which the allegedly illegal distinction rests could reasonably be conceived to be true by the governmental decisionmaker. Of course, *Vance* applied the rational-basis test. Here the Court has assumed, without deciding, that the fair and substantial relation test applies. But even assuming that under this latter test the Court must scrutinize legislative facts more closely, the Court is satisfied that the legislative facts on which § 51–179 rests are within the realm of legislative discretion.

fact, however, does not render the retirement/recall system unconstitutional. Assuming that the system operates in practice to give retired judges discretion to refuse *all* recall service, plaintiffs correctly point out that a rule prohibiting judges who refuse all recall service from both appearing in court and receiving retirement benefits cannot be justified on grounds of eliminating an appearance of partiality. Because such retired judge never sit as recalled judges, they do not in rapid succession occupy the conflicting roles of jurist and advocate. Nevertheless, the prohibition is justified on other grounds. The decision to deny retirement benefits to retired judges who appear in Virginia courts and eschew all recall service is fairly and substantially related to the permissible goal of maintaining a pool of retired judges who are willing to serve if recalled.

Virginia's judicial retirement system creates both benefits and burdens. To claim retirement benefits, a retired judge must expose himself to recall assignments. The clear purpose of the recall/retirement system is to insure the availability of a pool of auxiliary judges so that Virginia courts can more effectively address the problem of case backlogs. This system of benefits and burdens is rationally calculated to achieve this legitimate purpose; its general structure is well within any limitations imposed by the equal protection clause.

A rule prohibiting retired judges who refuse all recall service from both receiving retirement benefits and appearing in Virginia courts is necessary to preserve the integrity of the recall/retirement system. If, as plaintiffs argue, retired judges may exempt themselves from the prohibition against appearing in Virginia courts simply by refusing all recall service, the recall system will tend to collapse. Retired judges would have a strong incentive to refuse all recall service. By doing so, they would eliminate the burden of recall service and gain the benefit of being able to appear in Virginia courts. In addition, they would achieve these results without losing an immediate claim to retirement benefits. It is clear that the supply of retired judges

willing to accept recall would diminish. A rule denying retirement benefits to judges who eschew all recall service, then, is fairly and substantially related to the goal of maintaining a pool of retired judges for the recall system. The equal protection clause does not require Virginia to make special exceptions for those willing to accept the benefits of the recall/retirement system but not its legitimate burdens.

### III.

■ Finally, plaintiffs object to the Court's ruling that they lack standing to argue the invalidity of section 51–178 as applied to retired judges over age 70. The precise nature of plaintiffs' substantive argument is unclear. First, they can be interpreted to argue that section 51–178 impermissibly gives only retired judges over 70 discretion to refuse recall service. Because there is no, or insufficient, reason to treat retired judges under 70 differently with respect to discretionary recall, the argument runs, equal protection requires that judges under 70 must also be afforded discretionary recall. Plaintiffs have standing to raise this argument; they are injured by the legislature's decision to deny retired judges under age 70 discretion to refuse recall.

■ Although properly raised, plaintiffs' argument lacks merit. Given the physical and psychological problems associated with advancing age, *see Vance v. Bradley,* 440 U.S. 93, 112, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979), the Virginia legislature could have rationally concluded that the burden of obligatory recall would fall too harshly on retired judges over 70. Section 51–178, by giving retired judges over 70 discretion to refuse recall, strikes a sensible balance between the needs of the recall system, on the one hand, and the realities of aging, on the other. The constitution does not forbid this eminently reasonable accommodation of conflicting concerns.

■ Second, plaintiffs contend that retired judges over 70 must, like those under 70, be able to defer their claim to

retirement benefits, thus preserving their ability to make appearances in Virginia courts. They read the statute to prohibit retired judges who reach the age of 70 from deferring a claim to retirement benefits. Plaintiffs Craig and White have now filed affidavits that give them standing to challenge this alleged prohibition. In their affidavits, these plaintiffs allege that upon reaching the age of 70 they will, contrary to their wishes, be forced to end the "deferred retirement" they now enjoy and choose between receiving retirement benefits and appearing in Virginia courts. These allegations of future injury are not speculative. If the statute operates in the manner alleged by plaintiffs, they will no longer be able to defer their retirement benefits upon reaching age 70. They accordingly have standing to seek a declaration of the validity of the alleged prohibition against judges over 70 deferring retirement.

■ Defendants, at the outset, dispute plaintiffs' interpretation of state law. They argue that it is not clear that Virginia law precludes judges over 70 from deferring retirement. The Court need not decide whether plaintiffs read Virginia law correctly. Even assuming that they do, their constitutional objection is without foundation.[3]

The Court has held that the Virginia legislature's decision to force retired judges to choose between receiving retirement benefits and making appearances in Court is fairly and substantially related to permissible goals. That Virginia allows judges under age 70 to postpone this choice by deferring retirement is purely a matter of legislative grace. According to plaintiffs' interpretation of Virginia law, Virginia affords this privilege to judges under 70 but not to those 70 or older. But because judges over 70 are not a suspect class and there is no fundamental right to deferred retirement, the distinction satisfies equal protection as long as it has a rational basis. *See Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

The Court is satisfied that the alleged prohibition against deferred retirement for judges over 70 has a rational basis. It is not irrational for Virginia to require judges finally to choose between claiming retirement benefits and making appearances in Virginia courts. The retirement system would undoubtedly be more difficult to manage if retired judges were able forever to keep those who manage the system in limbo concerning whether and when they intend to claim benefits. Additionally, the legislature could reasonably have concluded that while deferred retirement is necessary to offset the burden of obligatory

---

**3.** The Court deems it inappropriate to abstain on the constitutional issue until Virginia courts decide whether retired judges over 70 may defer retirement. Under the doctrine of *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), federal courts should ordinarily abstain from deciding constitutional questions that depend on difficult and unsettled issues of state law. The purposes of the *Pullman* doctrine are twofold: To avoid unnecessary decision of constitutional issues and to avoid needless friction between the federal judiciary and state government. On balance, abstention in this case would not advance these policies.

The policy against unnecessarily deciding constitutional issues is at its strongest where the constitutional issue at stake is difficult. The reasons for the traditional reluctance to decide constitutional issues apply with considerably less force where the constitutional issue is easily resolved according to dispositive precedent on point or, as here, a routine application of settled principles. Abstention here would disserve the second *Pullman* policy, that of avoiding needless friction between state and federal governments. Whether or not Virginia courts interpret the judicial retirement statute to permit retired judges over 70 to defer their retirement, the judicial retirement scheme is clearly within constitutional limits. In this situation, it would be wasteful and unreasonable for federal courts to compel state courts to decide an unclear issue of state law and to keep state officials in suspense over the validity of judicial retirement system. Abstention here would only needlessly create friction and postpone an obvious result: A rule prohibiting retired judges from deferring retirement past the age 70 is rationally related to permissible legislative ends.

In deference to state courts, the Court assumes, *without deciding,* that retired judges over 70 may not defer retirement.

recall, the escape valve of deferred retirement is unnecessary once a retired judge reaches age 70 and has discretion to refuse recall assignments.

For the foregoing reasons, the Court reaffirms it decision to DISMISS the suit.