W. Carrington THOMPSON, Harold H. Purcell, David Meade White, Stuart L. Craig, Appellants,

v.

Charles B. WALKER, Matthew Blackwood, Stuart W. Connock, J. Aubrey Houghton, Ray C. Hunt, Jr., Walter J. Mika, Jr., Edwin C. Stone, The Virginia State Bar, Appellees.

No. 84–1448.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1985.

Decided April 4, 1985.

George F. West, Jr., Alexandria, Va. (Stephen C. Greenberg, Murphy, McGettigan & West, P.C., Alexandria, Va., on brief), for appellants.

John A. Gibney, Jr., Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Elizabeth B. Lacy, Deputy Atty. Gen., Malcolm R. West, Asst. Atty. Gen., Richmond, Va., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Four former Virginia judges have brought suit for a declaration that certain provisions of the Commonwealth's judicial retirement system covering them are unconstitutional, both under the Equal Protection Clause of Amendment Fourteen of the Federal Constitution and under the Commonwealth Constitution. For reasons which follow, we agree with the district judge that the requested relief was properly denied, although we readily admit that the case has been put with great grace and skill. The district court opinions ruling adversely to the plaintiffs, which incorporate a dismissal of the suit and reaffirmance thereof, appear as *Thompson v. Walker*, 583 F.Supp. 175, 180 (E.D.Va.1984).

An argument is advanced by the plaintiffs that disposition in the district court occurred too soon, before adequate development of the record. However, our review of the record satisfies us that the undisputed factual materials sufficed to allow full exploration and resolution of the matters which we have needed to consider.

The asserted violations of the Commonwealth Constitution do not present federal questions, and, in light of the disposition before trial of the federal questions raised, the district court was well within its discretion in declining to review them, there being no diversity of citizenship. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). While we have given some attention to the questions pressed under the Constitution of the Commonwealth we have done so only to lay to rest any concern that an equal protection violation of the Fourteenth Amendment to the Federal Constitution may have lurked under the skirts of the supposed infractions of the Commonwealth Constitution.

The attack by the plaintiffs has been directed at the current pension arrangements which saw the light of day in 1970, replacing an earlier plan which antedated the elevation to the bench of all four of the plaintiffs. The current plan came into effect subsequent to the taking of judicial office by three of the plaintiffs. One plaintiff, W. Carrington Thompson, however, left private practice to serve as a circuit court judge and, subsequently, as a Supreme Court Justice, after July 1, 1970, the

effective date of the pension plan currently in force.[1]

The heart of the matter is that in 1970, a new and additional qualification restricting the right to practice law was introduced into the retirement system which would have to be met for a retired judge to qualify to receive benefits.[2] Under Va.Code § 51–179 (1982), a retired judge receiving retirement benefits would have to refrain from appearing in any court of the Commonwealth to plead on behalf of a client.[3] Practice in federal courts, or in the courts of another state or of the District of Columbia, as far as matters appear to us, would not lead to ineligibility for the pension.[4] Other lawyers, who had served the Commonwealth in several of its agencies, and were covered by similar pension provisions, were not subject to disqualification from retirement benefits should they practice in a court of the Commonwealth.[5]

The four plaintiffs have also called to our attention the provisions of the Virginia Constitution, Art. VI § 4, which govern the matter of recall of retired judges to active service: "The Chief Justice of the Supreme Court ... may assign a retired judge of a court of record, with his consent, to any court of record except the Supreme Court." They then proceed to argue that Va.Code § 51–178(d) conflicts with that Virginia constitutional provision since the legislature has undertaken to make recall obligatory for a retired judge under 70 years of age, while the power vested exclusively by Article VI § 4 in Virginia's Chief Justice can only be exercised with the retired judge's consent.[6]

1. As the case has been developed, no point has been made of whether three of the plaintiffs might have stuck with the earlier scheme in all its aspects and argued from that vantage point. Judge David Meade White and Judge Stuart L. Craig by affidavit each asserted the position that he should be free of an unwelcome, new provision of the 1970 plan, but apparently accepted, perhaps because of improved benefits, that the retirement system effective July 1, 1970 would otherwise control. The plan in effect before July 1, 1970 did not condition pension payments to retired judges on their non-participation as counsel in litigation in the Commonwealth courts, the provision in the current plan on which the attack has centered. Whether such alternative to adhere to the earlier plan was available, whether increase in benefits payable under the 1970 plan was a significant consideration, whether the possibility of remaining under the earlier pension scheme was communicated to the three plaintiffs and whether the principles of *res judicata* or collateral estoppel would have any application in a subsequent proceeding are questions reserved for any other action one or more of the three might choose to bring.

2. In passing, it should be observed that, prior to retirement, practice of law by a judge, within or without the Commonwealth, is totally forbidden. Virginia Constitution Art. VI § 11. *See also* Va.Code § 17–3.1 (1982).

3. Office practice may be engaged in by a retired judge without any such adverse consequence. "No former justice or judge ... who is retired and receiving retirement benefits ... shall appear as counsel in any case in any court of the Commonwealth." Va.Code § 51–179. Canon 8(C) of the Canons of Judicial Conduct for the

Commonwealth of Virginia (1984) makes § 51–579 applicable to "all retired judges eligible for recall to judicial service." The legislature has imposed an obligation to serve upon recall on any retired judge under 70 years of age. Va. Code § 51–178(d) (1982). Service is discretionary for retired judges 70 or older. *Id.* No plaintiff has yet attained the age of 70. Justice W. Carrington Thompson will reach 70 on November 6, 1985; Judge White on March 10, 1988; Judge Harold M. Purcell on February 7, 1990, and Judge Craig on August 3, 1986.

4. As it happens, retired circuit court judges White and Craig have deferred their retirement benefits and are practicing before Commonwealth courts. Each would like to receive the retirement benefits which, as the law currently is applied, could only be brought about if each were to abandon practice before Commonwealth courts. While Virginia law appears to permit recall of Judges White and Craig, the practice of the Supreme Court has been to recall only those former judges receiving retirement benefits.

Justice Thompson and Judge Purcell are receiving their retirement benefits, but each feels inhibited from practicing before any Commonwealth court because doing so would lead to abrogation of the retirement benefits.

5. Former State Corporation Commission and Industrial Commission members receiving pension benefits may not appear before the respective commissions, but the ban does not run to court appearances. Va.Code § 51–179.

6. The argument is not persuasive. The provision of the Commonwealth Constitution seems

Next, proceeding on the assumption that retired Virginia judges, even those under 70 years of age, have a "right" to refuse recall in any and all cases, the plaintiffs contend that they can eliminate the possibility of any appearances of impropriety. They can prevent altogether any awkwardness of having a retired judge litigating on one side of the bench one day and adjudicating on the other side on the next. They assert they can do so simply by uniformly refusing to accept any recall assignment.

 Even so, apart from jarring a bit against our more customary impression of judges, retired or other, as persons anxious to further, not to frustrate, the judicial process, the argument arouses no possibility of equal protection denial. It presents at most a question of state law. Whether recall is obligatory or discretionary, in either case the Virginia law would have a very adequate rational basis. The same may be said of Canon 8(C) of the Canons of Judicial Conduct of the Commonwealth of Virginia which makes inappropriate any litigation by a retired judge receiving retirement benefits in a court of the Commonwealth.[7]

The point is that Virginia acted reasonably in setting up its recall system, whether it be obligatory or merely discretionary, for retired judges under 70 years of age. In either event, the making of a provision calling for retaining of a right—total or limited—to recall judges makes sense. Retired judges are not treated unfairly in being asked to serve on recall inasmuch as they are already receiving—or are entitled to receive—pension benefits designed to cover customary living expenses. Actual expenses incurred in performing recall services are mandated. Va.Code § 17-7. Though a recalled judge may in some senses "make" less than a judge in regular active service, any such consideration loses importance when it is appreciated that the number of days worked in a year by a recalled retired judge, as things uniformly operate, will, as a practical matter, be substantially less than the number of days worked in a like period of time by a judge on regular active service. Va.Code § 51-178 permits the Chief Justice of the Virginia Supreme Court to recall a retired judge to hear a particular case or to serve not in excess of 90 days in any calendar year. Moreover, a retired judge on recall receives supplementary *per diem* payments. Va. Code § 51-178(f).

It is entirely reasonable to provide sanctions to discourage retired judges from acting as litigators, whether or not they serve on a recall basis. The inopportune circumstances are more glaring, perhaps, when someone, having just acted as a judge appears the next day before a fellow judge, this time on behalf of a client. But the situation may also create infelicitous impressions even though the retired judge refuses altogether to sit, since he still will have emerged, in the public's eye, from the same mould, the same "club," as the active

---

explicitly to set a limit, not on what recall power may be exercised, but rather on how far the Chief Justice, himself, without legislative assistance, may go in employing it. If additional power in the area is to be exercised, whether by the Chief Justice or by some other judicial or administrative officer or group, the legislature must act to regularize or enlarge such enhanced power. That appears to us the inescapable conclusion to be drawn from the third sentence of Article VI § 4 of the Virginia basic law: "The General Assembly may adopt such additional measures as it deems desirable for the improvement of the administration of justice by the courts and for the expedition of judicial business."

However, that question of Commonwealth law is not before us and we do not purport to decide it. We may assume that the obligatory language of § 51-178(d) exceeded the powers of the Virginia legislature.

7. We also pass, without discussion, the further state law question which the plaintiffs have sought to raise of whether a provision of the Commonwealth Constitution, Article VI § 9, has been violated since diminution of salary during a judge's term of office arguably may occur. We note, however, that Article VI § 9 of the Constitution also permits retirement of judges to be governed by such conditions, compensation and duties as the General Assembly may prescribe. Retired judges and active judges appear to have been classified differently insofar as the prohibition of salary diminution is concerned.

judges regularly sitting with the result that an unfair advantage may be perceived.

 In view of considerations of that nature, it is also an eminently reasonable distinction to allow non-judicial retirees to litigate in courts of the Commonwealth without having to forego their pensions, while retired judges who insist on litigating must do without. Judges have sat at the adjudicating level. An assistant Commonwealth attorney general, or a legal advisor to a state regulatory commission, has not. The general populace, in the latter case, is not likely to perceive any unhealthy relationship by which one side to a legal firefight has an unfair "camaraderie" advantage. But for counsel who previously has, himself, or herself, been a judge the situation is manifestly otherwise.[8] The fact that the lawyer for the other side once was a judge could reasonably have been expected by the legislature not to have sat well with an opponent, especially a losing opponent. That might well be the case even though the retired judge had not performed a judicial function for several years.[9]

Furthermore, the legislature need not be deemed to have intended to encourage non-acceptance of recall by making it financially more rewarding for those who take such a stance. It would not further the proper and clearly indicated legislative objective of maintaining a ready pool of retired judges to help out in times of peak judicial loads to construe the law to permit retired judges adamantly to refuse any recall assignment, in order to guarantee that pension benefits would still be paid, even were they to appear as counsel in Commonwealth courts. Accordingly, we do not subscribe to the notion that the legislature has intended such an interpretation. Nor do we perceive any legislative incentive to assist a judge to guarantee his pension payments by refusing his services to the Commonwealth, the party paying the pension benefits.[10]

8. We note that Virginia has not pushed to the ultimate limits of its possible power to achieve the objective which the legislature had the right to adjudge to be in the public interest. It has not disqualified from pension benefits a retired judge engaging in an office practice. It has, so far as the record before us discloses, not denied pension payments outright and forever, but only so long as practice in a Commonwealth court continues. It allows a retired judge to litigate in federal courts or those of another state without any diminution in pension payments. And, it has not forbidden outright any and all litigation practice by a retired judge. If the retired judge elects to relinquish the pension, on grounds of overall remuneration, or because the personal satisfaction from continuing to appear in court outweighs the worth of the pension payments withheld during the period of such practice, he or she is not barred from functioning as a litigator in a Commonwealth court.

The plaintiffs try too hard to make of every difference an invidious distinction which infringes the equal protection clause. On the theories they have advanced, "disparate" treatment of active judges, wholly barred from any practice of law whatsoever, as contrasted with retired judges, who may practice law as much as they please, and who may do so without any disadvantage so long as they refrain from litigating in a Commonwealth court, would be unconstitutional. In treating retired judges somewhat better than active judges, the Commonwealth was not constitutionally bound to go all the way and allow unrestrained practice of law

without any reduction whatsoever in retirement benefits.

9. The attempt of the plaintiffs to portray as an invidious discrimination the statutory permission for a retired judge to conduct an office practice and still receive retirement benefits, although he or she is banned from litigating in a Commonwealth court fails with us. The appearances in the two situations simply are not the same. Giving advice in an office setting is often non-adversary and, in any event, does not publicly involve a one-time judge as an advocate. Only litigation brings together in the same courtroom the retired judge and a judicial colleague or former judicial colleague who will be called upon to adjudicate the dispute.

10. As a matter of practice, it so happens that only those receiving retirement benefits are presently recalled, ruling out, therefore, for the time being, at least, the possibility of a litigating retired judge's presiding at a trial. Nevertheless, it is fallacious to assume that the removal of the possibility of a retired judge's serving on recall and litigating at practically the same time would cure any and all possible unsavory aspects of litigation by a retired judge. Even should he or she no longer sit, he or she sat once, usually for an extended period of time. The legislature did not offend the federal equal protection clause in passing measures intended severely to reduce, though not to eliminate entirely, the possibility of litigation in Commonwealth courts by retired judges.

■ The judge who, after a distinguished career, bringing honor to the bench, with the inevitable onslaught of time takes retirement should not be penalized should he be willing to accept occasional recalls which will permit continuance, at a reduced schedule, of the activities a) which have merited his identification as an exemplary member of the judiciary and b) whose performance will redound to the benefit of the Commonwealth.[11] The proper governance of a body politic requires just enough, but not too many judges. The practice of recalling retired judges should be encouraged, not discouraged, for it affords a flexibility, permitting the number of judges to fluctuate, according to need, without increasing the risk of periods when there might be too many active judges to be kept busy.[12]

■ The plaintiffs further assert a liberty interest in the right to practice law and discrimination in the way in which the right is permitted to be practiced.[13] We have sought to delineate the reasons which make the treatment of the plaintiffs, viewed alone or in comparison with other retirees who are not judges, fair and non-discriminatory. We deal with no "suspect" classifications or interference with any "fundamental" right.[14] If the case should be decided on the basis of the rational basis test, the non-infringement of equal protection rights is readily apparent.[15]

■ In Justice Thompson's case, the condition of nonparticipation as a litigator, in Commonwealth courts if he, as a judicial retiree, were to receive the pension, was fully disclosed to him before he signed whatever passes for a contract of employment for a member of the judiciary. It does not shock the conscience for him to be held to the agreement which he freely entered.

---

11. Related to those considerations is the answer to the argument of the plaintiffs that mandatory recall before 70 and only consensual recall after 70 creates invidious discrimination against the judges under 70. At a certain point greater age and the probability of longer service merge to make the difference in treatment based on age entirely rational. *See Vance v. Bradley*, 440 U.S. 93, 112, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979). This is not a proceeding under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (1976 & Supp. III 1979), and there is no denial in equality of treatment, for all judges 69 and younger are treated exactly alike, as are all judges 70 or older.

12. With the current plethora of enthusiastic litigants and the development of attitudes and legislation encouraging the bringing of suits, it may be felt that the theoretical problem is too remote to be accorded any consideration. However, over long periods circumstances do change. Moreover, it by no means follows that, if service by retired judges is discouraged, provision for more regular active judges automatically will follow. Recall, in any event, is a system which provides more judges on a flexible basis and any step which tends to lessen its beneficial use should be eyed askance.

13. The argument that judges over 70, being compelled by statute (a) to refrain from deferring pension benefits and (b) to retire, are obviously worse off than retired judges under 70 who can, by deferring benefits, still appear as lawyers in Commonwealth courts, is inopportune. The plaintiffs are all under 70, and can-not assert rights of others. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). What their claims might be, should one or more of the plaintiffs reach 70, is not a question for today. *Cf. A/S Ludwig Mowinckles Rederi v. Tidewater Construction*, 559 F.2d 928, 932 (4th Cir.1977). With admirable if misguided assiduity, two of the plaintiffs complain that on reaching 70 they will have to accept pension benefits rather than defer retirement. While we have some doubt as to the correctness of their reading of Virginia law on the point, we will at the present stage assume that they are correct. Even so, on the rational basis test, and, almost certainly, on the "fair and substantial relations test" as well, the Commonwealth may allow benefits to be deferred as a matter of grace until 70 yet force judges 70 and over to accept them. In the great preponderance of cases, the retirement benefits were a factor of significance in a decision to go on the bench. The right to benefits *and* the right to litigate in Commonwealth courts were not held out as such an incentive.

14. *See Malmed v. Thornburgh*, 621 F.2d 565, 570 (3d Cir.1980).

15. *Compare Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Even expanding the test to require that a difference, to be justified, must have "a fair and substantial relation to the object of the legislation," *Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971), renders the Virginia legislative provisions governing retirement benefits for retired judges neither unreasonable nor arbitrary.

For the other three plaintiffs, they, as far as the record discloses, were willing to accept the 1970 pension plan, with the consequent presumed increased benefits, when it entered into force. If such action accepting the 1970 plan occurred voluntarily and knowingly, their contracts, thus amended, were no different than the one binding Justice Thompson. The contracts explicitly provided that practice in Commonwealth courts and receipt of retirement benefits were mutually exclusive. If, indeed, however, the plaintiffs were accorded no alternative, no right to stay in the predecessor system under which the right to receive pension benefits was not conditioned on refraining from litigation, the three plaintiffs, Judges White, Craig, and Purcell, may, subject to the observations appearing in note 1, *supra*, seek relief in another suit, should one or more of them elect to bring one. We, of course, express no opinion as to how such a case would turn out.

AFFIRMED.